IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAFAYETTE TONEY,

        Plaintiff,

    v.

CITY OF MEDFORD, CORY SCHWAB, and JAMES WILLIAMS,

        Defendants.
_____

Case No. 1:18-cv-01318-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

       Plaintiff Lafayette Toney filed this action against defendants City of Medford, Detective Cory Schwab, and Detective James Williams alleging excessive force in violation of 42 U.S.C. § 1983. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and U.S.C. § 636(c). For the reasons set forth below, defendants' motion is granted.

Page 1 – OPINION AND ORDER

**BACKGROUND**

On the evening of May 19, 2017, the Medford Area Drug and Gang Enforcement team was executing a prostitution sting, during which plaintiff was observed at the Courtyard Marriott ("the hotel") in Medford, Oregon, around 9:15 p.m. by Schwab. Mitton Decl. Ex. 1, at 16 (doc. 30-1). Specifically, plaintiff was observed entering the hotel with another individual, where he stayed for a short period of time and then returned to his car and left. Defs.' Mot. Summ. J. 3 (doc. 29). Schwab and another officer followed plaintiff and made a traffic stop. Mitton Decl. Ex. 1, at 16 (doc. 30-1).

During the traffic stop, plaintiff was taken into custody for promoting prostitution. Id. at 26. Instead of being transported to the Medford Police Department, plaintiff was returned to the hotel for questioning. Id. All interviews of individuals connected to the sting were conducted at the hotel to "minimize the number of police vehicles coming and going." Id. Plaintiff was placed in Room 111, a standard two bed hotel room, and seated on a bed with his hands cuffed behind him. Id. at 31, 34. At that time, detectives attempted to obtain consent to search a cell phone that was seized from the car plaintiff was driving. Mitton Decl. Ex. 6, at 38 (doc. 30-6); Mitton Decl. Ex. 2, at 27 (doc. 30-2). Plaintiff did not provide consent, so another detective switched the phone into "airplane" mode and Williams placed it on a nearby nightstand. Mitton Decl. Ex. 2, at 27 (doc. 30-2).

At some point, plaintiff stood up and reached for the cell phone on the nightstand.[1] Mitton Decl. Ex. 1, at 34 (doc. 30-1); Mitton Decl. Ex. 2, at 31-32 (doc. 30-2). After lunging for the cell

---

[1] Plaintiff denies intentionally touching the cell phone. Mitton Decl. Ex. 6, at 43 (doc. 30-6). However, plaintiff was convicted of attempted evidence tampering for "unlawfully and intentionally attempt[ing] to destroy, mutilate, alter, conceal or remove physical evidence, to wit: a cell phone." Mitton Decl. Ex. 11 (doc. 30-11); Mitton Decl. Ex. 12 (doc. 30-12). Accordingly, this fact is not in dispute for the purposes of summary judgement. See Holguin v. City of San

phone, Schwab tackled plaintiff onto the bed, which he described as "just a push back on the bed with my arms on him." Mitton Decl. Ex. 1, at 44 (doc. 30-1). Williams likewise stated Schwab had plaintiff in a headlock and was restraining him on the bed. Mitton Decl. Ex. 2, at 35 (doc. 30-2). Once sufficiently restrained, Williams removed the phone from plaintiff's hands. Id. at 37-38.

Plaintiff alleges the incident was sparked not from reaching for the cell phone, but from calling defendants derogatory names. Mitton Decl. Ex. 6, at 42-43 (doc. 30-6). Plaintiff testified Schwab wrapped his arm around his neck, brought him down to the bed, and punched him repeatedly in the "face, jaw, neck, face, ear." Id. at 41. Next, Williams jumped on plaintiff from behind where he kicked, punched, and yanked his wrist. Id. at 42. According to plaintiff, he possibly lost consciousness. Id. at 41-42.

After the cell phone was removed from plaintiff's possession, plaintiff was again seated on the bed; Schwab called his supervisors and reported that plaintiff did not complain of injuries, was not out of breath, and was responsive. Mitton Decl. Ex. 1, at 48 (doc. 30-1). Officer William Dode arrived at the hotel shortly thereafter to transport plaintiff to Jackson County Jail ("the jail"). Mitton Decl. Ex. 4, at 10 (doc. 30-4). Plaintiff was brought out to Dode's car and began to complain of wrist pain, so Dode instead transported plaintiff to a local hospital for evaluation. Id. at 10-11.

Plaintiff arrived in the emergency room at 11:49 p.m. with a chief complaint of neck and hand pain. Mitton Decl. Ex. 7, at 1, 3 (doc. 30-7). Plaintiff told the nurse "that his right hand went numb and [was] broken." Id. at 3. Plaintiff received a physical exam during which the doctor noted "no evidence of fracture of his right hand [and] no evidence of neck injury." Id. at 5. The doctor

---

Diego, 135 F.Supp.3d 1151, 1159-61 (S.D. Cal. 2015) (misdemeanor conviction barred the plaintiff from litigating the issue of whether officers had probable cause to support his detention and arrest in a subsequent civil action under 42 U.S.C. § 1983).

gave plaintiff medical clearance for incarceration. Id. at 3. After being discharged, plaintiff was taken to the jail. Mitton Decl. Ex. 4, at 15 (doc. 30-4).

On July 19, 2018, plaintiff filed a complaint in this Court. See generally Compl. (doc. 2). On October 1, 2018, an amended complaint was filed, alleging a single claim for excessive force. See generally Am. Compl. (doc. 14). On October 14, 2019, defendants filed the present motion.

## STANDARD OF REVIEW

Summary judgement is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T. W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

This dispute centers on whether Schwab or Williams violated plaintiff's constitutional rights. Defendants argue there is no genuine issue of material fact because plaintiff's testimony is blatantly contradicted by the other documentary evidence of record demonstrating no injuries and, by extension, no excessive force. In addition, defendants assert the City of Medford is entitled to summary judgment under Monell v. N.Y.C. Dep't of Soc. Serv., 436 U.S. 658 (1978). In the alternative, defendants argue qualified immunity applies to shield liability.

I.  **Preliminary Matter**

Before reaching the substantive merits of defendants' motion, the Court must address the evidentiary burden that exists at summary judgement and its implications in this case.

Summary judgement should be entered against "[a] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Here, plaintiff cites to portions of his own and defendants' depositions to support his opposition, but fails to provide any supporting evidence, including relevant deposition excerpts, declarations or affidavits. This is significant because some of the excerpts cited by plaintiff are not included in defendants' summary judgement evidence.

As such, from an evidentiary standpoint, defendants' motion is unopposed. Stated differently, in the absence of any evidence proffered by plaintiff, the Court must rely exclusively on the evidence submitted by defendants in reaching a conclusion. See Justice v. Rockwell Collins. Inc., 117 F.Supp.3d 1119, 1134 (D. Or. 2015), aff'd, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes… the court may treat that argument as conceded") (citation and internal quotations and brackets omitted); see also Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations,

unsupported by facts, are insufficient to survive a motion for summary judgement") (citation omitted).

## II. City Policy, Custom, or Practice

Local governments and officials acting in their official capacity can be sued directly under § 1983 where the plaintiff proves, amongst other elements, that the municipality had a policy, custom, or practice of violating such rights. Burke v. Cty. of Alameda, 586 F.3d 725, 734 (9th Cir. 2009) (citing Monell, 436 U.S. at 694).

Plaintiff asserts defendants have a clearly established policy "of interrogating arrestees in motel rooms." Pl.'s Am. Opp'n Mot. Summ. J. 14 (doc. 35). Aside from the fact that such a policy is not inherently unconstitutional, nor was it the driving force behind defendants' allegedly wrongful conduct, defendants deny that such a policy exists. Rather, Schwab testified that, on the evening in question, interviews were being held at the hotel "to keep involved officers on-site and to minimize the number of police vehicles coming and going from the motel." Mitton Decl. Ex. 1, at 26 (doc. 30-1). Nothing in the record contradicts defendants' evidence.

Accordingly, plaintiff's § 1983 claim against the City of Medford fails as a matter of law and defendants' motion is granted as to this issue.

## III. Excessive Force Claim Against Individual Defendants

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court evaluates, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

      A.      **Whether Plaintiff's Rights Were Violated**

"Fourth Amendment excessive force claims are examined under the reasonableness standard and the framework outlined by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989)." Price v. City of Sutherlin, 945 F.Supp.2d 1147, 1155 (D. Or. 2013) (citation omitted). In evaluating a claim of excessive force, the critical question "is whether the use of force was objectively reasonable in light of the facts and circumstances confronting the . . . officer." See Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007) ("[b]ecause the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa") (citations and internal quotations omitted). Courts analyze the reasonableness of the force used by "balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citation and internal quotations omitted). "Relevant factors to this inquiry include, but are not limited to, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Blankenhorn, 485 F.3d at 477 (citation and internal quotations omitted); see also Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994) (court must "look to whatever specific factors may be appropriate in a particular case, whether or not listed in Graham").

Turning first to the type and amount of force inflicted, defendants tackled plaintiff onto a hotel bed. Mitton Decl. Ex. 1, at 34 (doc 30-1). Since plaintiff was handcuffed with the cell phone in his hand, Schwab was unable to use an arm lock so instead he placed plaintiff in a neck restraint until the phone was secured by another officer. Id. at 35; Mitton Decl. Ex. 2, at 33, 35-38 (doc. 30-2). Thus, according to defendants, the duration of this physical contact was very brief and only employed to prevent plaintiff from tampering with or destroying evidence. Defs.' Mot. Summ. J. 8-10 (doc. 29).

Plaintiff disputes this account, alleging that he was kicked, punched, jumped on, and had his wrist yanked. Mitton Decl. Ex. 6, at 41-42 (doc. 30-6). Plaintiff also recounted that Schwab was wearing a metal watch during the incident, as he could feel "scraping and abrasions" on his neck. Id. at 45. He further states that his face was hurt and swollen, his jaw was sore, both of his hands were so swollen he could not move them, and he felt his wrist break. Id. at 44-45, 52. If his face had been photographed by defendants per his request, plaintiff maintains that bruising or abrasions would have been visible but "a little bit harder to see" due to "[his] pigment." Id. at 44-45. Finally, plaintiff testified that he was beaten so badly that he pleaded with the detectives "just don't kill me." Id. at 70.

However, medical evidence from the evening in question, as well as plaintiff's jail booking photo, directly contradicts plaintiff's version of events. Mitton Decl. Ex. 9 (doc. 30-9); Defs.' Mot. Summ. J. 15 (doc. 29); see also Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, and one is blatantly contradicted by the record, so that no reasonable jury could believe it, court should not adopt that version of the facts for purposes of ruling on motion for summary judgment.")

Notably, plaintiff was medically evaluated immediately after the incident. Mitton Decl. Ex. 7, at 1 (doc. 30-7). Not only did plaintiff receive medical clearance for incarceration, but during the physical examination the physician found plaintiff's neck had no "abrasion, contusions, lacerations swelling[,] or stridor." Id. at 4-5. Regarding the alleged hand injury, the doctor noted:

> No gross deformities. There is no bony tenderness of any bones of the right wrist and hand. There is full active range of motion at the right wrist. There is a 2+ right radial pulse and normal capillary refill in all digits. Patient is able to give a thumbs up and touch his thumb to his pinky. He is also able to cross his second and third digits. He reports that he is unable to make a full fist because it hurts and is numb. He does have sensation in all digits.

Id. at 4. Further, the doctor noted under neurologic function that plaintiff was "Alert and oriented. Moves all extremities spontaneously." Id. at 5.

Based on these clinical findings, the examining doctor concluded there was no evidence of fracture in plaintiff's right hand and no evidence of neck injury, but "in theory [plaintiff could] have some type of nerve injury although his motor function is normal." Id.

There is no other contemporaneous medical evidence regarding plaintiff's alleged injuries, and nothing in the record suggests the treatment plaintiff received on May 20 was inadequate or improper, beyond plaintiff's conclusory allegations unsupported by facts.[2] Mitton Decl. Ex. 6, at 52, 72-76 (doc. 30-6); see also Hernandez, 343 F.3d at 1116.

---

[2] Plaintiff references 2018 wrist x-rays showing an "old break in [his] wrist," but does not submit any medical or other evidence to corroborate this fact. Pl.'s Am. Opp'n Mot. Summ. J. 8 (doc. 35). In their reply, defendants introduce a letter from the doctor who x-rayed plaintiff's wrists, in which he opined that the wrist fracture was "at least a year [old] but this might have occurred decades ago." Second Mitton Decl. Ex. 1 (doc. 40-1). As such, nothing in the record indicates that plaintiff's injury was attributable to defendants' actions or occurred on the night in question. See Frank v. Cascade Healthcare Cmty., 2014 WL 793073, *7 n.4 (D. Or. Feb. 23, 2014), aff'd, 688 Fed.Appx. 461 (9th Cir. 2017) (finding no proof of physical injury under analogous circumstances).

In addition, plaintiff's mugshot, taken shortly after he arrived at the jail, shows no apparent bruises, scratches, swelling, or other injuries. Mitton Decl. Ex. 9 ([doc. 30-9](doc. 30-9)); Mitton Decl. Ex. 6, at 70 ([doc. 30-6](doc. 30-6)). Finally, a jail chart note from May 22, just days after the incident, indicated no swelling in plaintiff's hand. Mitton Decl. Ex. 8 ([doc. 30-8](doc. 30-8)). There is thus no proof that plaintiff was injured, such that the force he alleges defendants used is blatantly contradicted by the record. The type and amount of force utilized by Schwab and Williams appears to be consistent with their deposition testimony and the documentary evidence.

Looking next at the governmental interests at stake, the Court finds that several Graham factors weigh in defendants' favor. Here, plaintiff was convicted of attempted tampering with physical evidence, a Class B misdemeanor. The cell phone underlying the tampering charge was evidence obtained from an arrest for Promoting Prostitution, a Class C felony of which plaintiff was also convicted. Mitton Decl. Ex. 11 ([doc. 30-11](doc. 30-11)); Mitton Decl. Ex. 12 ([doc. 30-12](doc. 30-12)). Any force employed by defendants was incident to plaintiff's crimes — i.e., defendants restrained plaintiff to remove the cell phone from his possession. Mitton Decl. Ex. 2, at 35, 37-38 ([doc. 30-2](doc. 30-2)). It is unclear if officers felt plaintiff posed an immediate threat to their safety given that he was handcuffed; however, the Medford Police Department Use of Force Policy allows force to be used "to prevent the escape from custody of an arrested person," or to "prevent the destruction of evidence." Mitton Decl. Ex. 10, at 2,4 ([doc. 30-10](doc. 30-10)). It is reasonable that when plaintiff stood up without being told to do so, and "quickly rushed to the nightstand," that detectives could perceive this behavior as not only possibly threatening, but also potential evasion by flight or an attempt to destroy evidence. Mitton Decl. Ex. 1, at 34 ([doc. 30-1](doc. 30-1)).

In sum, the Court finds that no reasonable jury could conclude that Schwab's or William's actions were not objectively reasonable based on the totality of the circumstances. Although

plaintiff alleges a different version of events, no reasonable jury could believe plaintiff's version of events, given the undisputed contradictory documentary evidence introduced by defendants. See Scott, 550 U.S. at 380; see also Brown v. Union Cty., 2018 WL 3371597, *9 (D. Or. May 10), adopted by 2018 WL 3364663 (D. Or. July 9, 2018) (the plaintiff's subjective version of events was insufficient to create a disputed issue of material fact where it "conflict[ed] with the plain evidence in the record"); Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1260 (9th Cir. 2016) ("this court has refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony) (citation and internal quotations omitted).

### B. Whether the Right Was Clearly Established

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 741. The dispositive inquiry is whether the officers had "fair warning" that the force used was excessive. Id. at 740 (citation omitted); see also Mullenix v. Luna, 136 S.Ct. 305, 308 (2015) ("[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate") (citation and internal quotations omitted).

Here, the Court finds that the use of force was reasonable and not excessive, so plaintiff's constitutional rights were not violated. Even assuming plaintiff's rights were violated, it is not clear that Schwab and Williams had fair warning that the force they used was excessive.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgement ([doc. 29](doc. 29)) is GRANTED and judgement should be prepared dismissing this case.

IT IS SO ORDERED.

DATED this 9th day of December, 2019.

                                            /s/ Jolie A. Russo
                                              Jolie A. Russo
                                    United States Magistrate Judge